Filed 5/20/22  In re Savannah J. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re SAVANNAH J., a Person Coming Under the Juvenile Court Law. | B312284 (Los Angeles County Super. Ct. No. 18CCJP01137) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> Gelene C., <br><br> Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Jean M. Nelson, Judge.  Affirmed.

Zaragoza Law Office and Gina Zaragoza, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Stephen Watson, Deputy County Counsel, for Plaintiff and Respondent.

_____

Gelene C. (Mother) appeals from the juvenile court's order terminating her parental rights over 13-year-old Savannah J. Mother contends the juvenile court erred in finding the beneficial parental relationship exception to termination of parental rights did not apply. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.   *The Dependency Petition*

On February 21, 2018 the Los Angeles County Department of Children and Family Services (Department) filed a dependency petition on behalf of then-nine-year-old Savannah alleging Father (D.J.) emotionally, physically, and sexually abused Savannah and Mother failed to protect Savannah from Father's abuse. Further, Mother had a history of drug abuse and currently abused marijuana and alcohol, which rendered her unable to provide regular care for Savannah.

B.   *The Jurisdiction and Disposition Hearing*

At the March 18, 2019 jurisdiction and disposition hearing, the juvenile court sustained the amended allegations[1] under Welfare and Institutions Code section 300, subdivisions (a), (b),

_____

[1]   The petition was amended by interlineation on May 18, 2019 to add allegations Mother currently abused PCP.

2

(c), and (d),[2] declared Savannah a dependent of the court, and removed Savannah from Mother's and Father's custody. The court ordered Mother to participate in counseling and a drug rehabilitation program, and to submit to random or on demand drug and alcohol testing every other week. The court granted Mother monitored visitation up to three times a week. Father was incarcerated, and the court ordered that he and Savannah have no contact.

C.      *Mother's Visitation in 2019*

The August 22, 2019 status review report stated Mother inconsistently visited with Savannah. On one occasion Mother cancelled the visit. On another visit Mother was 45 minutes late. In the September 16, 2019 last minute information for the court, the Department reported, "Mother continues to struggle with visitation . . . . Mother is constantly late for the majority of her visits and at times, [M]other is not able to visit because of work obligations or for other reasons, such as to stay home to receive a package."

In the November 12, 2019 last minute information for the court, the Department reported as to recent visits Mother was late once and cancelled once. During a visit on October 22, 2019, Mother told the social worker the visit was "'boring,'" although she did not end the visit. Mother admitted to the social worker that she had "'told Savannah the [Father] has an Instagram [account].'" Mother added, "'I don't understand why y'all making a big deal about it. It happened so long ago.'" When the social

_____

[2]      Further statutory references are to the Welfare and Institutions Code.

worker told Mother that she was not to discuss Father with Savannah, Mother stated she did not "see the harm it could have done to Savannah." The caregiver later informed the social worker that Savannah had been using Instagram to send messages to Father.

On November 6, 2019 the social worker interviewed Mother by phone about her recent visit with Savannah. Mother reported Savannah plays on Mother's phone often during their visits. When the social worker asked whether Savannah communicated with Father over Instagram during their visits, Mother replied, "'[W]ell I showed her his pictures on Instagram.'"

At the November 12, 2019 review hearing, the juvenile court found Mother had not made substantial progress toward alleviating or mitigating the causes necessitating Savannah's placement. The court terminated family reunification services for Mother and reduced Mother's visitation to two times per month.

D.    *Mother's Visitation in 2020*

The Department's October 19, 2020 status report described Mother's visitation with Savannah in 2020. On January 7 Mother arrived 15 minutes late for her visit with Savannah. Mother gave Savannah some Christmas gifts, and the two played basketball and talked. Mother ended the visit after two and a half hours, although the social worker indicated the visit could have been extended.

On February 14 Mother arrived 30 minutes late for her visit with Savannah. Mother explained the bus was late, and she apologized. Mother brought Savannah food Mother had prepared, and the two played, jumped rope, and took a photograph together. On February 28 Mother arrived one hour

4

late to her visit. Mother brought a new pair of shoes for Savannah, and the two jumped rope and talked. The visit lasted 45 minutes.

On March 13 Mother arrived on time for her visit. Mother brought a coloring book and crayons for Savannah. When Savannah told Mother she was hungry, Mother bought a hamburger for her from a nearby stand.

The social worker attempted from April to October 2020 to contact Mother regarding visitation, but Mother did not respond. On April 9 Savannah reported she and Mother were calling each other on the phone and the conversations were going well. In May Savannah stated "her caregiver is loving, supportive, [and] treats her like family, and Savannah sees the caregiver as a mother." Savannah wanted to continue to stay with her caregiver.

On July 15 Savannah reported she visited Mother at the caregiver's beauty shop while the caregiver styled Mother's hair for Mother's birthday. The social worker asked Savannah to tell Mother to contact the social worker. Savannah's caregiver reported that prior to the COVID-19 pandemic Mother was consistently visiting with Savannah, but since the pandemic started, Mother was having only weekly telephone contact with Savannah. Mother told Savannah she wanted to visit, but Mother had not contacted the Department or answered the social worker's calls. The social worker again asked Savannah to tell Mother to contact her. Savannah told the social worker she "was excited about being adopted by her current caregiver."

On September 23 Savannah reported she spoke with Mother "from time to time," and she wanted to visit with Mother. The social worker explained to Savannah she was not able to

reach Mother. The caregiver stated Mother "calls sporadically," and the caregiver told Mother numerous times to contact the social worker.

On November 9 the juvenile court ordered the Department to facilitate birthday and holiday visits between Mother and Savannah and to assess more frequent visits for Mother. According to the February 5, 2021 last minute information for the court, Mother visited Savannah one additional time in November 2020. Mother did not visit Savannah again prior to the March 12, 2021 selection and implementation hearing.

E.     *The Selection and Implementation Hearing*

At the March 12, 2021 selection and implementation hearing (§ 366.26), Mother's attorney appeared on behalf of Mother. The Department's and Savannah's attorneys requested the court find Savannah adoptable and terminate Mother's and Father's parental rights. Savannah's attorney noted Savannah was doing very well in the caretaker's home and at school. He added, "Mother has not had an in-person visit in quite sometime, . . . [and Mother] still has not contacted the social worker to set up those visits." Savannah's attorney noted Mother had not had a visit since Savannah's birthday (in November), and stated, "I believe at this time that the court cannot find that any of the exceptions to adoption apply and I would ask that the court terminate parental rights to [Mother]." Mother's attorney objected to termination of Mother's parental rights and asserted, "While Savannah has gone through a lot, she is much older than most of the children we have. My understanding is that [Savannah] does want to be adopted; however, I do think that she would do best to stay in contact with [Mother] . . . ."

6

The court found no exception to adoption applied, explaining, "I find it would be detrimental to Savannah to be returned to the parents. . . . Mother hasn't been visiting in person, although that has been made available to her, and Mother was never able to prove herself protective. She couldn't grasp the risks that she had created by encouraging contact with the Father and she wasn't able to progress in understanding how to protect her daughter." The juvenile court found Savannah was adoptable by clear and convincing evidence and terminated Mother's and Father's parental rights.

Mother timely appealed.

## DISCUSSION

A.    *The Beneficial Parental Relationship Exception*

"At the section 366.26 hearing, the focus shifts away from family reunification and toward the selection and implementation of a permanent plan for the child." (*In re S.B.* (2009) 46 Cal.4th 529, 532; accord, *In re Caden C.* (2021) 11 Cal.5th 614, 630 (*Caden C.*).) "'Once the court determines the child is likely to be adopted, the burden shifts to the parent to show that termination of parental rights would be detrimental to the child under one of the exceptions listed in section 366.26, subdivision (c)(1).'" (*In re B.D.* (2021) 66 Cal.App.5th 1218, 1224-1225 (*B.D.*); accord, *In re Celine R.* (2003) 31 Cal.4th 45, 53 ["court must order adoption and its necessary consequence, termination of parental rights, unless one of the specified circumstances provides a compelling reason for finding that termination of parental rights would be detrimental to the child"].)

7

Under section 366.26, subdivision (c)(1)(B)(i), "the parent may avoid termination of parental rights" if the parent establishes by a preponderance of the evidence "that the parent has regularly visited with the child, that the child would benefit from continuing the relationship, and that terminating the relationship would be detrimental to the child. [Citations.] The language of this exception, along with its history and place in the larger dependency scheme, show that the exception applies in situations where a child cannot be in a parent's custody but where severing the child's relationship with the parent, even when balanced against the benefits of a new adoptive home, would be harmful for the child." (*Caden C., supra*, 11 Cal.5th at pp. 629-630; accord, *B.D., supra*, 66 Cal.App.5th at p. 1225.)

A parent has regular visitation and contact when the parent "'visit[s] consistently,' taking into account 'the extent permitted by court orders.'" (*Caden C., supra*, 11 Cal.5th at p. 632; accord, *In re I.R.* (2014) 226 Cal.App.4th 201, 212.) Whether "'the child would benefit from continuing the relationship'" with his or her parent is shaped by factors "such as '[t]he age of the child, the portion of the child's life spent in the parent's custody, the "positive" or "negative" effect of interaction between parent and child, and the child's particular needs.'" (*Caden C.*, at p. 632; accord, *B.D., supra*, 66 Cal.App.5th at p. 1225.) "'If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that,' even considering the benefits of a new adoptive home, termination would 'harm[]' the child, the court should not terminate parental rights." (*Caden C.*, at p. 633.) "While application of the beneficial parental relationship exception rests on a variety of factual determinations properly reviewed for

substantial evidence, the ultimate decision that termination would be harmful is subject to review for abuse of discretion." (*Id.* at p. 630; accord, *B.D.*, at p. 1225.)

B.     *We Decline To Find Forfeiture*

The Department contends Mother forfeited her argument the juvenile court abused its discretion in determining the beneficial parental relationship exception did not apply by failing to argue at the selection and implementation hearing that the exception applied, instead making only "a general objection" to termination of Mother's parental rights.  Although Mother's attorney did not specifically argue the beneficial parental relationship exception applied, we decline to find forfeiture.

"[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court."  (*In re S.B.* (2004) 32 Cal.4th 1287, 1293; accord, *In re Maria Q.* (2018) 28 Cal.App.5th 577, 590 ["'A party forfeits the right to claim error as grounds for reversal on appeal when he or she fails to raise the objection in the trial court.'"].)  Moreover, "[g]eneral objections are insufficient to preserve issues for review. [Citation.]  The objection must state the ground or grounds upon which the objection is based."  (*In re E.A.* (2012) 209 Cal.App.4th 787, 790; accord, *In re Daniel B.* (2014) 231 Cal.App.4th 663, 672.)  "'The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected.'"  (*Daniel B.*, at p. 672.)

At the selection and implementation hearing, Mother's attorney objected to the termination of Mother's parental rights, asserting that because of Savannah's age she "would do best to stay in contact with [Mother] . . . ."  As discussed, the age of the

9

child is a relevant factor in determining whether the child would benefit from continuing the relationship with his or her parent. (*Caden C., supra*, 11 Cal.5th at p. 632; *B.D., supra*, 66 Cal.App.5th at p. 1225.)  Further, the juvenile court specifically addressed the beneficial parental relationship exception, finding Mother had not been visiting in person despite the opportunity and Mother failed to apprehend the danger Father posed to Savannah.  Although neither Mother's attorney nor the juvenile court uttered the words "beneficial parental relationship exception," the record makes clear the juvenile court understood Mother's attorney to be relying on the exception, as shown by the juvenile court's response to Mother's objection to termination of her parental rights that Mother failed regularly to visit, a necessary condition for application of the exception. (*Caden C.*, at p. 632.)  Under these circumstances, we decline to find forfeiture.  (See *In re S.B., supra*, 32 Cal.4th at p. 1293 ["application of the forfeiture rule is not automatic"]; *Unzueta v. Akopyan* (2019) 42 Cal.App.5th 199, 215 ["'[N]either forfeiture nor application of the forfeiture rule is automatic.'"].)

C.    *The Juvenile Court Did Not Abuse Its Discretion in Finding the Beneficial Parental Relationship Exception Did Not Apply*

Mother contends the juvenile court abused its discretion in finding the beneficial parental relationship exception did not apply because Mother regularly visited Savannah and the court failed to analyze the other two prongs of the exception articulated in *Caden C., supra*, 11 Cal.5th at page 629.  The Department contends substantial evidence supports the court's finding on visitation because Mother failed regularly to visit with Savannah

10

before Mother's parental right were terminated, and the court was not required to address the other prongs of the exception. The Department has the better argument.

Contrary to Mother's contention, Mother had to show all three prongs were met for the beneficial parental relationship exception to apply. (*Caden C., supra*, 11 Cal.5th at pp. 629 [for beneficial parental relationship exception to apply, parent must show regular visitation, benefit to the child from continuing the relationship, and that termination of the relationship would be detrimental to the child]; *B.D., supra*, 66 Cal.App.5th at p. 1225 [same].) A lack of regular visitation "fatally undermines any attempt to find the beneficial parental relationship exception." (*In re I.R., supra*, 226 Cal.App.4th at p. 212 [juvenile court did not abuse its discretion in finding beneficial parental relationship exception did not apply where it was undisputed "there were significant lapses" in mother's visitation]; accord, *In re J.C.* (2014) 226 Cal.App.4th 503, 531 [juvenile court did not abuse its discretion in finding exception did not apply where the mother missed five visits in the six weeks preceding the hearing and there was a "troubling manner of [m]other's cancellations and pattern of changing her plans last minute"]; *In re C.F.* (2011) 193 Cal.App.4th 549, 554 [juvenile court did not abuse its discretion in finding exception did not apply where "overall [mother's] visitation was sporadic," including visiting only three times in a three-month period despite court order allowing weekly visitation].)

Substantial evidence supports the juvenile court's finding that Mother failed to show regular visitation to the extent permitted by court orders. As the juvenile court observed, "Mother hasn't been visiting in person, although that has been

11

made available to her." The record shows Mother visited Savannah in person only twice in the year proceeding the selection and implementation hearing (once in July as the caregiver styled Mother's hair and a second time in November 2020). On appeal, Mother asserts only that "regular phone contact continued" during this period. But even Mother's phone contact was "sporadic[,]" and Savannah stated as of September 2020 that she spoke to Mother "from time to time." Regardless, regular phone contact does not constitute visitation to the extent permitted by the court's visitation order, which allowed in-person visits twice a month. Although Mother may well have been limited in her ability to have in-person contact at the start of the COVID-19 pandemic, as of July 15, 2020 Mother had an in-person visit with Savannah, yet she only visited Savannah one time during the eight months leading up to the March 2021 selection and implementation hearing.

Moreover, the social worker repeatedly contacted Mother to set up visits, but Mother failed to return the calls. The caregiver (and likely Savannah) also told Mother to call the social worker to arrange visits. Mother provides no explanation for her failure to contact the Department to arrange visitation. Given the lack of regular visitation during the year leading up to the selection and implementation hearing, the juvenile court did not abuse its discretion in finding the beneficial parental relationship exception did not apply.

## DISPOSITION

The order terminating Mother's parental rights is affirmed.


                                        FEUER, J.

We concur:


PERLUSS, P. J.


SEGAL, J.